AF Initials

Chief Initials

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 8:14-CR-445-T-27MAP

MELVIN BARBER BRIDGERS, III

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A.

Lee Bentley, III, United States Attorney for the Middle District of Florida, and the

defendant, MELVIN BARBER BRIDGERS, III, and the attorney for the defendant,

Alec Hall, Esq., mutually agree as follows:

**A.    Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two

of the Information.  Count One charges the defendant with production of child

pornography, in violation of 18 U.S.C. §§ 2251(a) and (e).  Count Two charges

the defendant with receipt and distribution of child pornography, in violation of 18

U.S.C. §§ 2252(a)(2) and (b).

2.    Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of fifteen

years' imprisonment up to a maximum of thirty years' imprisonment, a fine of up

to $250,000, a term of supervised release of at least five years up to life, and a

Defendant's Initials

special assessment of $100.  Count Two is punishable by a mandatory minimum term of five years' imprisonment up to a maximum of twenty years' imprisonment, a fine of up to $250,000, a term of supervised release of at least five years up to life, and a special assessment of $100.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:    an actual minor, that is, a real person who was less than 18 years old, was depicted;

Second:    the Defendant employed, used, persuaded, induced, enticed, or coerced the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction, *e.g.*, video or image of the conduct; and

Third:    the visual depiction, *e.g.*, video or image was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer.

The elements of Count Two are:

First:    the Defendant knowingly received or distributed a visual depiction;

Second:    the depiction was shipped or transported in interstate or foreign commerce by any means, including by computer through the internet;

Defendant's Initials _MB_    2

<table>
<tr><td>Third:</td><td>producing the visual depiction involved using a minor engaged in sexually explicit conduct;</td></tr>
</table>

Third:    producing the visual depiction involved using a minor engaged in sexually explicit conduct;

Fourth:    the depiction is of at least one minor engaged in sexually explicit conduct; and

Fifth:    the Defendant knew that at least one performer in the visual depiction was a minor and knew that the depiction showed the minor engaged in sexually explicit conduct.

4.    <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.    <u>Mandatory Restitution to Victims of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to victims L.A., K.P., K.A., M.C., and S.J.

7.    <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States

Defendant's Initials _MB_      3

has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.     Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of

Defendant's Initials  _MB_                    4

Florida, and the defendant agrees that the defendant cannot, and will not, challenge that determination, whether by appeal, collateral attack, or otherwise.

      9.    <u>Cooperation - Substantial Assistance to be Considered</u>

         Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of

Defendant's Initials _MB_        5

sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot, and will not, challenge that determination, whether by appeal, collateral attack, or otherwise.

     10.    Use of Information - Section 1B1.8

     Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

     11.    Cooperation - Responsibilities of Parties

     a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

Defendant's Initials _MB_       6

b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in

open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials _MB_                8

12.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2253, whether in the possession or control of the United States, the defendant or defendant's nominees.  The assets to be forfeited include, but are not limited to, any and all computers, laptops, DVDs, cellular telephones, or other electronic devices or electronic media that was used to facilitate the commission of the offenses.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also hereby agrees to waive all constitutional, statutory and procedural challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to the provisions of Rule 32.2(b)(1)(A), the United States and the defendant request that promptly after accepting this Plea Agreement, the Court make a determination that the

Defendant's Initials _____        9

government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of his cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant's Initials   _MB_                10

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Defendant's Initials  _MB_               11

13.     Sex Offender Registration and Notification

        The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school.  Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student.  The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status.  The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

**B.      Standard Terms and Conditions**

1.      Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters

Defendant's Initials _MB_          12

a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2.     Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.     Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from

Defendant's Initials ___*M*$\mathcal{B}$___          13

the United States, denied citizenship, and denied admission to the United States in the future.

### 4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

### 5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from

Defendant's Initials _MS_          14

any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government

regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

    7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that

plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is, in fact, guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials _*MB*_            18

## FACTS

On January 27, 2014, a Pinellas County Sheriff's Office (PSCO) detective received a referral from the National Center for Missing and Exploited Children (NCMEC) about child pornography being posted on Facebook.com, a social media/networking website, under the screen name of "Brianna Benson." The detective reviewed the pornographic images, which showed a pre-teen female intentionally exposing her vaginal and anus area to a camera by bending over and spreading her buttocks. The detective then tried to determine the true identity of "Brianna Benson" through the internet protocol (IP) address associated with these images when they were posted on Facebook. The IP address traced to a residence located in Tarpon Springs, Florida, within the Middle District of Florida, where the defendant, Melvin Barber Bridgers, III, was residing. From at least in or about December 2012 through on or about May 1, 2014, the defendant had been posing as a teenage female on the internet, and using the screen name "Brianna Benson," to receive and distribute child pornography images on the internet, and to use, persuade, induce, entice, and coerce real minor females to engage in sexually explicit conduct, for the purpose of taking photographs of themselves engaged in sexually explicit conduct and sending those photographs to the defendant via the internet (an instrumentality of interstate commerce) through the use of a computer or other electronic device.

On March 28, 2014, the PCSO detective received information that additional reports were being provided to NCMEC from Facebook regarding child

Defendant's Initials  _MB_          19

pornography being found in multiple accounts in the name of "Brianna Benson," who was actually the defendant controlling all of those accounts. The detective learned that defendant, posing as "Brianna Benson" on Facebook as a teenage female supposedly from Boca Raton, Florida, had used, persuaded, induced, and coerced a 12-year old female (hereinafter referred to as L.A.) in the Houston, Texas area to produce sexually explicit photographs of herself and send them to the defendant on Facebook. Once the defendant had coerced L.A. to produce and send him several pornographic photographs of herself, the defendant told L.A. to send him more nude photos of herself and her 7-year old sister. The defendant threatened to upload to the internet every nude photo that he had of L.A. and send them to L.A.'s mother if L.A. did not comply.

With consent, a detective logged into L.A.'s Facebook account to view the chat activity between L.A. and the defendant. The detective saw nude photos of L.A. that the defendant had sent to L.A. as a reminder that the defendant had the photographs and was willing to post them on Facebook for everyone, including L.A.'s mother, to see if L.A. did not comply with his demands. The detective also reviewed some of the last online chats between L.A. (identified in the chats below as VICTIM1) and the defendant, posing as "Brianna Benson," on November 30 and December 1, 2013, which are as follows:

Conversation started November 30, 2013:

11/30, 10:22pm
Brianna Benson
I`m about to post your pics If you don`t chat me back in 10 minutes

Defendant's Initials _____ 20

11/30, 10:42pm
Brianna Benson
Hello? Will you fucking talk to me wtf?>

11/30, 10:43pm
VICTIM1
Sorry. I haven`t been on since thanksgiving morning. Ive had a lot of stuff
going on with my mom in the Hospital.
Sorry again. I don't have much time right now. I`m with my little sister
my aunt , and my granda . I can`t talk right now.

11/30, 10:43pm
Brianna Benson
Yes you can do u want me to post your pics everywhere?
I only want 10 more pics and I will leave you alone forever If not I will
show everyone

11/30, 10:45pm
VICTIM1
Okay. But can I get them to you a little bit later tonight . I swear I will get
you 10 pics by tonight. Can you tell me what 10 pics you want,.? I swear I
will get them to you tonight .

11/30, 10:47pm
Brianna Benson
Message me when you get where you can take them and I will tell you If
you don`t this is the last chance I will post them everywhere

11/30, 10:47pm
VICTIM1
Okay. I swear I will mesage you tonight. and Its a deaal. Do you swear
only 10 pics?

11/30, 10:49pm
Brianna Benson
15 and no more or no less ok

11/30, 10:49pm
VICTIM1
Okay. Promise???

11/30, 10:49pm
Brianna Benson
Promise how long til u can take them baby?

11/30, 10:50pm
VICTIM1
about an hour and 30 min. But if I get time before that I swear I will text u
kk?

11/30, 10:52pm
Brianna Benson
ok how old is your sis baby?

11/30, 10:52pm
VICTIM1
7

11/30, 10:52pm
Brianna Benson
Send some pics of her instead

11/30, 10:53pm
VICTIM1
Wait. What kind of pics????

11/30, 10:53pm
Brianna Benson
Idc naked lol

11/30, 10:54pm
VICTIM1
My little sister is 7 years old. I`m not going to take naked pictures of her

11/30, 10:55pm
Brianna Benson
Ok well I will post your pics then I want a few of her and you ok
And I won`t show or tell anyone and leave you alone forever after ok

11/30, 10:55pm
VICTIM1
Please Thats my little sister. I can`t do that to her. I beg you. Please

11/30, 10:56pm
Brianna Benson
She won`t know baby and I won`t tell anyone I promise where is she now?
Just a few ok
DO u want me to post your pics everywhere?

11/30, 10:56pm
VICTIM1
Yes. she will. Her brother has done that to her before. I swore . She
already lknow`s about this stuff. Please. I`m begging you

11/30, 10:57pm
Brianna Benson
Ok take some of her while she`s asleep ok

11/30, 10:57pm
VICTIM1
I can`t she will wake up. and she sleeps with my grandparents

Brianna Benson
No she won`t I want some of her omfg take one of her now and send it
Tell you what get on skype and let me see her and you ok

11/30, 10:59pm
VICTIM1
will we have to get naked?

11/30, 10:59pm
Brianna Benson
But don`t tell her the cam is on ok

11/30, 10:59pm
VICTIM1
She know`s better than that

11/30, 10:59pm
Brianna Benson
Get on skype whats your skype?

11/30, 10:59pm
VICTIM1
I don`t have a skype

11/30, 10:59pm
Brianna Benson
Ok download it do u have oovoo?

You`re a liar get on skype now or I start posting pics
Just for a few minutes

11/30, 11:01pm
VICTIM1
i have oovoo

11/30, 11:01pm
Brianna Benson
ok whats your oovoo?

11/30, 11:03pm
VICTIM1
hold on please

11/30, 11:03pm
Brianna Benson

DOwnload skype omfg get on skype

11/30, 11:05pm
VICTIM1
ok hold on

11/30, 11:06pm
Brianna Benson
Please hurry
Whats your skype?
???????????????
WIll u answer me omnfg
I`m about to start posting pics
Whats your skype? HEllooooooo
Really? Wtf
Will u answer me and stop ignoring me Wtf
Why are u reading my messages and Ignoring me you`re pissing me off
get on skype for a few minutes and take the  pics and we will be done ok
Omfg
Whats your skype?
You got about 2 minutes to answer me or this pic goes up

11/30, 11:19pm
Brianna Benson

11/30, 11:20pm
Brianna Benson
HELLLLLOOOOOOO!!!!!!!!!!!!!!!!!!!!!!!!!

11/30, 11:20pm
VICTIM1
Hold on please.tryiing to fine my charger

11/30, 11:21pm
Brianna Benson
Idgaf get on skype WHATS YOUR SKYPE OMFG YOU`RE PISSING
ME OFF SO BAD I SWEAR

?????????????????????????????????????????????????????????????????????
???????
WIll fucking stop ignoring me and tell me your skype I`m not asking
again I will post your pics seriously you`re being stupid and pissing meoff
Wtf really? Are you just stupid or are you doing this to try and piss me the
fuck off
Its about to be 50 pics or I start posting them if you aren`t on skype in 5
minutes
?
What is your problem? DO you not think I will post our pics all over
facebook?
I`m about to start sending [your mother] your pics
DO u want your mom seeing your pics?


11/30, 11:36pm
VICTIM1
No


11/30, 11:37pm
Brianna Benson
Get on skype NOW OMfg! Whats your skype If you don`t I will send her
everyone I have
???????????????????????????//
God Dammit STOP FUCKING IGNORING ME WTF IS WRONG WITH
YOU YOU`RE FUCKING PISSING ME THE FUCK OFF NOW I`M
BEING NICE GIVING YOU A CHANCE TO TAKE PICS AND GET
ON CAM ITS ABOUT TO BE NO CHANCE
TELL ME YOUR FUCKING SKYPE AND LOG ON OR WE ARE
DONE AND EVERONE WILL SEE YOU NAKED INCLUDING YOUR
MOTHER
You have to be the dumbest bitch I ever met I swear to god Lmao Wtf is
your problem? DO u think I`m joking around lol


11/30, 11:55pm
Brianna Benson
I got all the pics uploaded over 50 to send to your mom in a message and
I`m about to hit send if you don`t fucking answer me
So whats it gonna be?


Defendant's Initials _____ _MB_          26

12/1, 12:01am
Brianna Benson
I guess the only way you'll believe me is if I post a pic and tag you huh?

12/1, 12:21am
Brianna Benson
??>???????????????????????????????????????
Are u ready to take the pics or do I need to post them?
?
WIll you fucking answer me god dammit and stop acting like a fucking
child Qtf is your problem Omfg
Omfg

12/1, 12:40am
Brianna Benson
????????????

12/1, 12:46am
Brianna Benson
Will you please fucking say something and stop reading my messages and
ignoring me what is wrong with you?
Why are u going to make me do this to you?
Stop reading my fucking messages and ignoring me wtf
Please say something?
Fine I give up I won't post your pics I'm deleting all of them now and I
will leave you alone Bye
You cannot reply to this conversation. Either the recipient's account was
disabled or its privacy settings.

The defendant was in control of at least four Facebook accounts
that all had the same alleged teenage female as the owner of the profile; they
were briannabenson144, briannabri143, briannabenson143, and
briannabenson2014.  Search warrants were obtained for all four accounts.  The
search warrant results showed that the defendant, posing as "Brianna Benson,"

Defendant's Initials ___ _MB_           27

had developed webpages contained within the Facebook domain directed at younger people called Cute Relationships, Cutest girls, and Cutest boys. From these sites, the defendant, as "Brianna Benson," would direct females to a Facebook address. Once there, the defendant, posing as "Brianna Benson," would start the conversation with statements like: You are gorgeous, how old are you and are you bi (bisexual). The responses from female individuals ranged from 12 years old to 19 years old. In every chat conversation, the defendant, posing as "Brianna Benson," would tell the girl that she was bored and taking sexy pictures. The defendant, as "Brianna Benson," would then ask every female, regardless of age, if the female would take nude pictures, and would also instruct them on what sexual poses to be in. A few examples of the instructions given by the defendant were: nude on your stomach, in the bathroom in front of the mirror, I want to see your pussy, bend over, bite your lip, stick your finger in your mouth, and other similar sexually suggestive orders.

Law enforcement located the minor female who the defendant depicted in photographs as "Brianna Benson" on Facebook, who is referred to herein as K.P. At the time of her interview in May 2014, K.P. was 16 years old. K.P. was shown the Facebook homepage of "Brianna Benson" and confirmed that the photographs depicted her, but she did not recognize the name "Brianna Benson." K.P. advised that when she was between 14 and 15 years old, she sent various naked or pornographic photographs to another purported 15-year old female that she met online in December 2012. K.P. stated that the female

Defendant's Initials _____ _MB_        28

had sent her a pornographic image and asked her for one in exchange. K.P. stated that she was given instructions on how to pose in the photograph. Following the initial exchange, K.P. did not want to send more photographs. K.P. stated that when she refused to continue to send photographs, the female threatened to send them to everyone and posted online. K.P. believed that the female might have gone by the name "Erica," and was from Florida. "Erica" inquired if K.P. was bisexual. K.P. stated that the chats continued for more than a week, but she became scared because she was threatened if she refused to send pornographic photographs of herself. K.P. stated that she had to send 5 photographs. After she sent those photographs, another 5 were demanded of her. If K.P. was slow in sending the photograph, "Erica" would say that: "K.P. was making her cry. I'm going to send these out. I'm going to kill myself. I'm going to cut and I stopped cutting a while ago." When K.P. was shown a portion of threats that the defendant had send out under the guise of "Brianna Benson," K.P. stated that these statements were what "Erica" used to say to her. K.P. was shown some of the pornographic photographs that the defendant had distributed on the internet, and K.P. verified that it was her in the photographs.

Another minor female that the defendant used, induced, and coerced into producing sexually explicit photographs of herself and transmitting them to him through the internet was 13-year old K.A., who resides in Zephyrhills, Florida, within the Middle District of Florida. On or about November 17, 2013, the defendant engaged in an online chat with K.A., in which the

Defendant's Initials  _MB_          29

defendant demanded that K.A. send him nude photos of herself or the defendant would expose K.A. to her friends and family as being bisexual. K.A., through the internet, sent a photograph of herself standing nude in front of the bathroom mirror.  The defendant then demanded additional photographs and gave instructions on how K.A. was to pose.  Additionally, the defendant sent nude photos, through the internet, of "Brianna Benson" (K.P.) to show K.A. what the pose should look like.  K.A. refused and said she was with her cousin.  The defendant then asked K.A. how old her cousin was.  K.A. stated that her cousin was 8 years old.  The defendant then demanded that K.A. send nude photos of her cousin, and if K.A. did not, the defendant was going to send her nude photo to all of her friends and family.  K.A. pleaded for the defendant to stop asking for pictures and not to send any of hers to anyone.  K.A. also refused to send any of her 8-year old cousin's photos.  After numerous demands and threats by the defendant, K.A. sent, through the internet, approximately 10 nude photos of herself to the defendant as instructed.  The defendant then demanded more, but K.A. refused and stopped responding to the defendant.  In response, the defendant sent a message to K.A. stating: "Ok well I will just post your pics since you want to be a bitch.  Finish the pics so I can block you."

Law enforcement interviewed K.A. in June 2014. K.A. stated that she was Facebook friends with "Brianna Benson" and that "Brianna Benson" sent K.A. nude photographs.  K.A. advised that sent nude photos to "Brianna Benson" but did not want to.  After K.A. sent the first nude photo to "Brianna Benson," the

defendant began threatening K.A. to send her pictures to her family and she got

very scared.  K.A. stated that she did not take pictures of her cousin nude and

also lied to "Brianna" about her cousin's age, hoping that if she said 8 years old

"Brianna" would not ask for pictures and would leave her alone.  K.A. also stated

that she and "Brianna" had made tentative plans to meet in St. Petersburg,

Florida.  However, they never met.  K.A. stated she had been worried for a long

time about the pictures she was made to send and whether "Brianna" was ever

going to carry out her threats.

        Also in June 2014, law enforcement interviewed another minor

female, M.C., that the defendant had used, induced, and coerced to produce

sexually explicit photographs of herself and send them to him, posing as "Brianna

Benson," through the internet.  M.C. was 12 years old at the time of the interview

and resides in Naples, Florida, within the Middle District of Florida.  M.C. advised

that she and "Brianna Benson" used to chat on Facebook when M.C. was 10 or

11 years old.  M.C. advised that "Brianna Benson" had sent her nude

photographs and that M.C. had sent "Brianna Benson" nude photographs.  MC

stated that Brianna Benson would take "really nasty" photographs of herself.

M.C. said she was instructed by "Brianna Benson" (the defendant) about how to

pose in the photographs.  M.C. advised that she sent nude photographs of

herself to "Brianna Benson," because she was threatened.  M.C. stated that if

she did not continue to send nude photographs, "Brianna Benson" would expose

her to her friends and family.  However, M.C. decided to stop sending the nude

images to keep "Brianna Benson" from having more material to blackmail her with. M.C. eventually blocked "Brianna Benson" but remained in fear that "Brianna" would carry out her threats.

M.C. communicated with "Brianna Benson" using her IPod Touch because she did not have a cell phone or computer. M.C. would use Facebook and Pinger, both mobile applications that use the internet, to chat with, text, and send and receive pictures from the defendant, posing as "Brianna Benson." M.C. met "Brianna Benson" by accepting a Facebook friend request. M.C. advised that "Brianna Benson" suggested that they meet in person, but nothing ever came of the discussion.

Law enforcement also recovered sexually explicit photographs of minor female S.J., who resides in Hollywood, Florida, from a "Brianna Benson" Facebook account controlled by the defendant. S.J. advised law enforcement in June 2014 that she was first contacted by "Brianna Benson" sometime in March of 2013 via Facebook. The conversation started with "Brianna Benson" telling S.J. she was pretty and wanting to know whether S.J. was bi-sexual. "Brianna Benson" told S.J. that she was 16 years old and asked how old S.J. was, who advised 15.

Once S.J. and "Brianna Benson" became friends on Facebook, the defendant immediately began to ask S.J. for nude pictures. The defendant sent nude pictures of "Brianna Benson" first and then S.J. sent some of herself back. The defendant would then ask for more pictures. At one point, S.J. told the

Defendant's Initials _____MB_____        32

defendant she did not want to send anymore pictures and just wanted to be friends. The defendant then began blackmailing her and threatened to tell her family. This went on for approximately 8 months. S.J. advised that at one point she was made to send "Brianna Benson" between 40 and 50 nude pictures a night. The defendant would not allow S.J. to sleep, do her homework, or go to the bathroom in peace until she sent the pictures.

The defendant asked S.J. whether she had a younger sister or family member, and S.J. told the defendant that she had a 13-year old niece in Ocala. When S.J. would visit her family in Orlando and Ocala, the defendant would demand pornographic pictures of S.J.'s niece, but S.J. refused to take them.

S.J. believed that "Brianna Benson" (K.P.) was the person she was talking to and sending pictures to online. S.J. recognized a photograph of the defendant, however, as a person that "Brianna Benson" had introduced her to on Facebook as an individual named "Chris." "Brianna Benson" told S.J. that the defendant's name was "Chris" and they were just friends, but that "Chris" was a person "who would fuck for money." S.J. stated that "Chris" had discussed traveling to Hollywood, from Boca Raton for the purposes of engaging in a threesome sexual act with S.J., "Brianna Benson," and himself. "Brianna Benson" told S.J. that "Chris" would pay S.J. $300.00 to have sex. S.J. told "Brianna Benson" that she was not a prostitute.

Defendant's Initials _MB_          33

According to S.J., the meeting never took place and she never met the defendant face-to-face. However, after S.J. stopped conversing with "Brianna Benson," the defendant, posing as "Chris," attempted to call and text S.J. several times, but S.J. still did not meet him. S.J. estimated that the last time the defendant attempted to make contact with her was in December 2013. S.J. had deleted text messages between her and the defendant but still had his phone number. S.J. advised that her contact with "Brianna Benson" and "Chris" was all done on her phone through Facebook, but S.J. also advised that "Brianna Benson" made her send sexually explicit videos of herself on her phone through iMessenger. S.J. advised that some of the videos she sent to "Brianna Benson" were of her and her ex-boyfriend having sex.

On May 1, 2014, a federal search warrant was executed at the defendant's residence in Tarpon Springs, Florida. The defendant's laptop was on his bed and was powered on. The defendant voluntarily agreed to be interviewed by law enforcement. The defendant admitted to posing as a juvenile female on Facebook using the alias "Brianna Benson." The defendant also admitted to extorting both known and unknown juvenile females on Facebook to take both digital images and digital video of the juvenile females naked and engaged in various sexual acts. The defendant also admitted to viewing said images and videos and masturbating to what he had instructed the juvenile females to do. In addition, numerous digital images of naked juvenile females and naked juvenile females engaged in sexual acts were discovered on the

Defendant's Initials _____ *MB*          34

defendant's laptop as well as in the Facebook accounts that he controlled.  The defendant possessed in excess of 20,000 images of child pornography.

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _17th_ day of _November_, 2014.

A. LEE BENTLEY, III
United States Attorney

MELVIN BARBER BRIDGERS, III
Defendant

JOSEPHINE W. THOMAS    12-8-14
Assistant United States Attorney

ALEC F. HALL
Attorney for Defendant

SIMON A. GAUGUSH
Assistant United States Attorney
Chief, General Crimes Section

35